the act should be a dead letter until the 1st of June. On the contrary, it would seem to be clear that it was intended that these should be operative from the day the act was approved. The reason for the postponement of the law, as to proceedings under it, is well known. The law had made it the duty of the supreme court to prescribe orders and rules in bankruptcy; and these, from the pressure of other duties, could not be prepared before the 1st of June. For the purpose of insuring uniformity in the proceedings, it became necessary to suspend the right of petitioning until that day; but, for all other purposes, it was operative from its passage. And it is most obvious that any other construction of the section referred to, would have had a very decided effect in defeating the object of the statute. If all transactions occurring prior to the 1st of June, though plainly in conflict with the provisions of the bankrupt act, and involving gross frauds, were withdrawn from its operation, and virtually legalized, great facilities would have been afforded for the evasion of the salutary restrictions and prohibitions of the statute. And it can hardly be imputed to congress that such a result could have been intended. But, aside from the 50th section of the act, there are other evidences that it was intended the statute should take effect, in its main provisions, from its passage. In the beginning of the 39th section it is provided "that any person residing and owing debts as aforesaid, who, after the passage of this act," shall commit any of the numerous acts of bankruptcy specified in the section, may be proceeded against in bankruptcy. The words are not, after this act shall take effect, but after the passage of the act, which means plainly, after the 2d of March, the date of the approval of the act. And this is not within the category of retroactive laws, as its operation is upon future transactions, and not those that are past.

In addition to this, light is cast upon the question under review by the 35th section of the statute. The purpose of this section is to point out under what circumstances conveyances and transfers of property, by one in contemplation of bankruptcy, shall be deemed fraudulent and void; and it prescribes the duties and powers of assignees in bankruptcy, in proceedings to set aside such conveyances and transfers, and for the recovery of property thus fraudulently sold, or disposed of. In the beginning of the section it is provided "that if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition, by or against him, shall dispose of his property in the way specified, his acts shall be fraudulent and void, and the property disposed of may be recovered by his assignee in bankruptcy." Here, it will be observed, the limitation as to time is, four months prior to the filing of the petition. And any act within the purview of the section, committed within that time, is declared

to be fraudulent and void. Now, in this case, the assignment by Langley was on the 25th of May, and the petition in bankruptcy was filed the 17th of July following; and, as less than four months intervened, the assignment is within the operation of the 35th section. If, therefore, there was a doubt as to the true construction of the 50th section of the act, the reference to the 35th and 39th sections shows conclusively that the statute extends to transactions occurring prior to the 1st of June, 1867, and that they are proper subjects of jurisdiction under the bankrupt law. Now it is not denied by counsel that the bankrupt act of the 2d of March, 1867, so far as it defines what are acts of bankruptcy, and points out the mode of proceedings, supersedes all insolvent laws of the state. I have before referred to this well settled doctrine, and will only cite some of the authorities by which it is sustained: Ex parte Eames [Case No. 4,237]; Judd v. Ives, 4 Metc. [Mass.] 401; [Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 195; [Houston v. Moore] 5 Wheat. [18 U. S.] 22; and also a very learned opinion by Judge Williams, of the district court of Allegheny county, Pa., in Com. v. O'Hara, 6 Am. Law Reg. (N. S.) 765; In re Hill [Case No. 6,481]. It results conclusively, that if the provisions of the bankrupt act were in force on the 25th of May, 1867, the date of the assignment, and that assignment was within the scope and intent of the law, and as an act of bankruptcy, altogether null and void, the probate court of Gallia county had no jurisdiction of the assignment, and the acts of that court in regard to it are wholly invalid. And no argument is needed to prove that no court can legitimately obtain jurisdiction by any act against law, and inherently void. The argument, therefore, that the Gallia county probate court, having obtained jurisdiction under the state law, is entitled to retain it to the end of the proceeding, has no force or application. That court had no authority to act in the matter of the assignment, as the jurisdiction of this court was paramount and exclusive. There is, therefore, no conflict of jurisdiction.

A decree in bankruptcy must be entered; and the usual order for a warrant is directed to be made. As a matter of course, the motion to dissolve the injunction heretofore granted, is overruled.

[NOTE. Subsequently a bill in equity was filed by Langley against Perry to revise and reverse the adjudication of bankruptcy entered in this case. Demurrers to this bill were overruled, and the judgment of this court reversed. Case No. 8,067.]

PERRY (LANGLEY v.).   See Case No. 8,067.

## Case No. 11,007.

### PERRY v. LITTLEFIELD.

[Cited in Perry v. Corning, Case No. 11,004. Nowhere reported; opinion not now accessible.]